[No. 3080-1. Division One. January 10, 1975.]

*In the Matter of the Welfare of* JERRY DEAN BURTTS.
THE STATE OF WASHINGTON, *Respondent,* v. JERRY
DEAN BURTTS, *Petitioner.*

*Mark Leemon* of *Seattle-King County Public Defender,* for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *Jonathan B. Noll, Deputy,* for respondent.

HOROWITZ, J.—Petitioner, a minor, seeks review by writ of certiorari of an order of the juvenile department of the King County Superior Court ordering petitioner be turned over to the proper officers for trial under the provisions of the criminal code.

On May 1, 1974, a petition was filed in the juvenile department of the King County Superior Court alleging Jerry Dean Burtts, born May 29, 1958, was delinquent by reason of his having murdered his mother and stepfather. Follow-

ing a juvenile court hearing on the decline of juvenile court jurisdiction held on May 24, 1974, and June 3, 1974, the court on June 4, 1974, entered findings, conclusions and order declining jurisdiction.

It is undisputed petitioner, while seriously mentally ill, killed his mother and stepfather. It is prima facie established that at the time of the killing petitioner was not legally insane under the *M'Naghten* test. The court found:

> That a Prima Facie case has been established.
>
> The protection of the community requires a decline due to the seriousness of the alleged offense, which was committed in an agressive [*sic*], violent, premeditated or willful manner.
>
> The evidence of the offense appears to be sufficient to be considered by a jury in a criminal case in a felony prosecution as stipulated by the respondent.
>
> The child should remain in the detention facilities of this court.

Petitioner attacks the decline order because (1) RCW 13.04.120, authorizing the juvenile court to decline jurisdiction "in its discretion," deprives petitioner of due process and equal protection of the laws; alternatively, the trial court (2) abused its discretion in declining jurisdiction; and (3) committed procedural irregularities thereby denying petitioner due process of law. The irregularities claimed are (a) the findings and conclusions are incomplete and too general to conform to the requirements of JuCR 6.4; (b) petitioner was denied effective assistance of counsel because the trial court (1) engaged in ex parte communication with others on matters involving the merits of the case, (2) denied petitioner the right to cross-examine the State's witness probation officer, (3) engaged in improperly questioning witnesses during trial. We do not agree with petitioner and affirm.

THE NATURE AND PURPOSE OF
JUVENILE COURT JURISDICTION

The constitutional objections raised require a brief statement of provisions pertinent here concerning juvenile court

jurisdiction when the May 1, 1974, petition was filed. The juvenile court law (RCW 13.04), implemented by Juvenile Court Rules (JuCR 1.1 to 7.4; *see* RCW 2.04.190-.200), is administered by the juvenile court (RCW 13.04.030), a branch of the superior court system of the state. *See Dillenburg v. Maxwell*, 70 Wn.2d 331, 413 P.2d 940 (1966), 422 P.2d 783 (1967). The purpose of the juvenile court law is stated in RCW 13.04.140:

> [T]hat the care, custody and discipline of a dependent or delinquent child as defined in this chapter shall approximate as nearly as may be that which should be given by its parents, and in all cases where it can be properly done, the dependent or delinquent child . . . shall be placed in an approved family and may become a member of the family, by adoption or otherwise . . .

In *State ex rel. Pulakis v. Superior Court*, 14 Wn.2d 507, 522, 128 P.2d 649 (1942), the court dealing with juvenile court law explained:

> The primary purpose of the laws relating to minors, which are pertinent to this inquiry, is not to punish a so-called delinquent child, but rather "to give to the weak and immature a fair fighting chance for the development of the elements of honesty, sobriety and virtue essential to good citizenship." *In re Lundy*, 82 Wash. 148, 143 Pac. 885.

The juvenile court law applies "to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children." RCW 13.04.010. The statute defines the terms "dependent child" and "delinquent child." A delinquent child is

> any child under the age of eighteen years who violates any law of this state, or any ordinance of any town, city, or county of this state defining a crime or who has violated any federal law or law of another state defining a crime, and whose case has been referred to the juvenile court by any jurisdiction whatsoever.

RCW 13.04.240 provides:

An order of court adjudging a child delinquent or dependent under the provisions of this chapter shall in no case be deemed a conviction of crime.

For purposes of the juvenile court law,

all children who have been adjudicated delinquent and dependent children within the state shall be considered wards of this state and their persons shall be subject to the custody, care, guardianship and control of the court as hereinafter provided.

RCW 13.04.010.

RCW 13.04.095 provides when the child is found to be "delinquent" or "dependent" the court makes "such order for the care, custody, or commitment of the child as the child's welfare in the interest of the state require." A child may be committed to the temporary or permanent care or custody of others, including parents, other persons, a private agency, to the department of public assistance, or the department of institutions. RCW 13.04.095, .100, .190, .200. RCW 13.04.095 also provides "In no case shall a child be committed beyond the age of twenty-one years." Indeed, in *In re Gilder*, 98 Wash. 514, 167 P. 1093 (1917), it was held a juvenile court loses jurisdiction over a committed delinquent female child when she reaches the age of 21 years. To protect a juvenile's future, RCW 13.04.250 requires the director of institutions to provide for the selective destruction of the files of the department of institutions dealing with committed juveniles found delinquent when the juvenile becomes 21 years of age. The age of 21 referred to in the first two instances mentioned has been changed to 18 years. *In re Carson*, 84 Wn.2d 969, 530 P.2d 331 (1975). The court has not yet determined whether the attained age of 21 years referred to in RCW 13.04.250 is to be changed to 18 years.

The exercise of jurisdiction over a juvenile may be relinquished. RCW 13.04.120 provides

the court, in its discretion, may order [juveniles under 18 years of age who have committed a crime] to be turned over to the proper officers for trial under the provisions of the criminal code.

JuCR 6.1 to 6.5 regulate the decline-of-jurisdiction hearing procedures. JuCR 7.1 to 7.2 recognize that in the absence of waiver (JuCR 7.3) the juvenile has a right to remain silent and the right to retained counsel, or if the juvenile is indigent, the right to court-appointed counsel. By declining jurisdiction the court renders the benefits of the juvenile court law inapplicable to the delinquent child.

The juvenile court's discretion described in RCW 13.04.120 is not unfettered. The discretion is a judicial discretion, exercised as part of the judicial power vested in the superior court by Const. art. 4, § 1. The exercise of judicial power must be performed in light of the constitutional requirements of due process, equal protection, and other constitutional guaranties not yet fully explored. JuCR 7.1 to 7.3 recognize certain of those rights. Moreover, important constitutional guaranties for juveniles have been explained in judicial decisions, including those involving decline of jurisdiction. *See In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967); *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966); *State v. Williams*, 75 Wn.2d 604, 453 P.2d 418 (1969); *Dillenburg v. Maxwell, supra.* In *Dillenburg v. Maxwell, supra*, the court, in discussing RCW 13.04.120, stated its agreement with the factors discussed in *Kent v. United States, supra*, to be considered by a juvenile court when exercising discretion in decline of jurisdiction cases. *State v. Williams, supra,* used the *Kent* criteria. *Dillenburg* and *State v. Williams* represent an authoritative and binding construction of RCW 13.04.120. *See State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973). As stated in *In re Correia*, 104 R.I. 251, 254-55, 243 A.2d 759, 761 (1969), "It is accepted practice . . . for a reviewing court to give vitality to imprecise criteria by resorting to judicial construction whenever possible."

To assure judicial responsibility, the discretion exercised by a juvenile court is reversible for manifest abuse of discretion, *i.e.,* when "the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972). Moreover, when a juvenile court exercises judicial power, including the exercise of discretion, like other courts it is subject to law-oriented reasons, precedents, legal concepts and principles, as well as traditional legal logic characteristic of the American legal system. K. Llewellyn, *The Common Law Tradition—Deciding Appeals* (1960), points out 14 major steadying influences helping to assure certainty, predictability, and what he calls reckonability of the decisions reached. These influences are what he calls law-conditioned officials, legal doctrine, known doctrinal techniques, responsibility for justice, *the possibility, although not the necessity, of one single right answer,* the necessity of an opinion by an entire bench, the necessity of deciding a case based on a frozen record from below, case issues limited, sharpened and phrased in advance, adversary argument by counsel, group judicial decision, judicial security and honesty, a known bench, the general period style in opinion writing and its promise, and professional and judicial office.

RCW 13.04.120 therefore requires a responsible exercise of discretion—one subject to and in conformity with (1) the purpose of the juvenile court law (RCW 13.04.140); (2) procedural safeguards contained in the Juvenile Court Rules and the Bill of Rights authoritatively construed by court decisions; (3) with respect to minor children under the age of 18 years who are "delinquent" or "dependent" (RCW 13.04.010); and (4) by a court exercising judicial power subject to the traditional restraints governing the exercise of a discretion reviewable for abuse.

CLAIMED UNCONSTITUTIONALITY OF RCW 13.04.120

Petitioner contends RCW 13.04.120, in authorizing a decline of jurisdiction by a juvenile court "in its discretion,"

violates due process. He argues the discretion described is virtually unbridled, so that it violates the doctrines of void for vagueness, overbreadth, illegal delegation of legislative power, and petitioner's right to equal protection of the laws. The Supreme Court of Washington has heretofore assumed the decline of jurisdiction provision of RCW 13.04.120 to be constitutional. *State v. Williams, supra; State v. Piche,* 74 Wn.2d 9, 442 P.2d 632 (1968); *Williams v. Rhay,* 73 Wn.2d 770, 440 P.2d 427 (1968); *Sheppard v. Rhay,* 73 Wn.2d 734, 440 P.2d 422 (1968); *Dillenburg v. Maxwell, supra; State v. Melvin,* 144 Wash. 687, 258 P. 859 (1927); *State ex rel. Sowders v. Superior Court,* 105 Wash. 684, 179 P. 79 (1919); *State v. McPherson,* 72 Wash. 371, 130 P. 481 (1913).

Petitioner's constitutional objections, if accepted, could threaten the validity of many statutes other than RCW 13.04.120. These include juvenile court law statutes, *e.g.,* RCW 13.04.150, .095, .230. Questions of validity could be raised with respect to over 140 statutes in this state involving the exercise of discretion. Illustrative statutes are cited in the margin.[1]

That other statutes may be rendered invalid does not compel the conclusion that the decline of jurisdiction statute is valid. Nevertheless, the reach of petitioner's contentions does not serve to lighten petitioner's heavy burden to show RCW 13.04.120 invalid.

We confine ourselves to a consideration of petitioner's arguments we deem controlling. Each constitutional objec-

---

[1](1) RCW 4.44.470—to require additional security in civil action; (2) RCW 4.84.190—to allow and apportion costs; (3) RCW 7.52.230—to order other securities exhausted first; (4) RCW 19.90.100—to impose fine or imprisonment or both; (5) RCW 26.32.030—to dispense with approved agency's consent to adoption; (6) RCW 46.29.400—to allow payment of judgment in installments; (7) RCW 46.61.650 (Repealed by Laws of 1971, 1st Ex. Sess., ch. 307, § 24.)—to determine extent of area to be policed by person convicted of littering; (8) RCW 61.12.060—to set upset price; (9) RCW 71.06.180—to issue warrant for apprehension of psychopathic delinquent and order detention; (10) RCW 89.30.190—to consolidate condemnation cases.

tion relied on rests upon the claim that the discretion described in RCW 13.04.120 is an unfettered one, without standards essential to the intelligible and guided exercise of that discretion. Petitioner points to studies showing substantial differences exist in the manner in which the discretion is exercised. *See Transfer of Cases Between Juvenile and Criminal Courts: A Policy Statement,* 8 Crime and Delinquency 3, 5 (1962); Note, *Rights and Rehabilitation in the Juvenile Courts,* 67 Colum. L. Rev. 281 (1967); Comment, *Waiver of Jurisdiction in the Juvenile Courts,* 30 Ohio St. L.J. 132 (1969); Comment, *Waiver of Jurisdiction in Wisconsin Juvenile Courts,* 1968 Wis. L. Rev. 551 (1968).

The existence of differences on the exercise of discretion takes place even when standards are present. The possibility of differences does not necessarily invalidate the discretionary exercise of power. We have already determined that the discretion described in RCW 13.04.120, implemented by JuCR 6.1 to 6.5, is not an unfettered discretion; that adequate standards exist for the exercise of the discretion described. On this view, petitioner's constitutional objections are untenable. We proceed nevertheless to a brief discussion of those objections.

■ A statute is void for vagueness if it fails to "apprise a man of common understanding of the nature of the charges against him [so as to] enable him to prepare his defense." *In re Richard,* 75 Wn.2d 208, 211-12, 449 P.2d 809 (1969). The doctrine has been recently reaffirmed in *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975).

■ The State contends the void for vagueness doctrine is inapplicable for two reasons: First, the standards are adequate. The State refers to a number of decisions upholding a decline of jurisdiction statute with rather minimal standards. The rationale of these decisions supports the sufficiency of the Washington standards. *In re Correia,* 104 R.I. 251, 243 A.2d 759 (1969); *Sherfield v. State,* 511 P.2d 598 (Okla. Crim. App. 1973); *Lewis v. State,* 86 Nev. 889, 478 P.2d 168 (1970); *In re F.R.W.,* 61 Wis. 2d 193, 212

N.W.2d 130 (1973); *State ex rel. Londerholm v. Owens*, 197 Kan. 212, 416 P.2d 259, 271 (1966); *L. v. Superior Court*, 7 Cal. 3d 592, 498 P.2d 1098, 102 Cal. Rptr. 850 (1972); *Lujan v. District Court*, 505 P.2d 896 (Mont. 1973); *In re Weidner*, 6 Ore. App. 317, 484 P.2d 844, 487 P.2d 1385 (1971). It is true the majority opinion in *People v. Fields*, 388 Mich. 66, 199 N.W.2d 217 (1972), *aff'd on rehearing*, 391 Mich. 206, 216 N.W.2d 51 (1974), held Michigan's juvenile decline of jurisdiction statute unconstitutional for failure to contain any standards whatsoever. The case is either distinguishable or is not persuasive. As already noted, RCW 13.04.120 provides for a discretion complying with the standards requirement. The State secondly contends the void for vagueness doctrine applies only to a statute prohibiting conduct in which a citizen may engage; that RCW 13.04.120 does no more than deal with a procedural disposition to be made by a court of a delinquent child. Although we need not rest our holding thereon, there is case support for this argument. *In re Juvenile*, 306 N.E.2d 822, 827 (Mass. 1974); *State v. Scoville*, 113 N.H. 161, 304 A.2d 366, 369 (1973). We agree the void for vagueness doctrine is inapplicable here.

■ Petitioner contends RCW 13.04.120 results in "stripping away of juvenile court protections from those clearly entitled to them [and] is plainly overbroad." The doctrine of overbreadth is explained, for example, in *Grayned v. Rockford*, 408 U.S. 104, 114, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), as follows:

> A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct.

*Grayned* is followed in *Blondheim v. State, supra.* RCW 13.04.120 does not prohibit any conduct by a juvenile, much less "constitutionally protected conduct"; nor, for the reasons heretofore discussed, can it be said the juvenile court, empowered to exercise discretion, is empowered to do so in a manner violative of the juvenile's constitutional rights.

■ Petitioner contends RCW 13.04.120 constitutes an illegal delegation of legislative power. He relies on cases dealing with the delegation of discretion to an administrative agency. Case law dealing with the validity of delegation of legislative power to an administrative agency is far from uniform. K. Davis, *Administrative Law* § 2.01-.10 (3d ed. 1972). In Washington, it is true, the delegation of legislative power to an administrative agency must be accompanied by proper standards. In the instant case, it should first be noted the discretion exercised is purely judicial. *In re Juvenile*, *supra* at 827; *State ex rel. Londerholm v. Owens*, *supra* at 271. Secondly, the discretion described is subject to adequate standards.

Petitioner contends he was denied equal protection of the laws. He argues by the use of unbridled discretion RCW 13.04.120 in effect carves out two classes of juveniles under 18 years of age: one class who will and another class who will not be tried as juveniles for a criminal offense. He argues such result brings about an arbitrary application of the statute resulting from the use of conflicting standards subjectively applied. We have already pointed out RCW 13.04.120 does not provide for an unfettered discretion. Petitioner relies on the majority opinion in *People v. Fields*, *supra*, to support his view. We do not find that opinion persuasive.

## ABUSE OF DISCRETION

■ Petitioner contends the court abused its discretion in declining jurisdiction because of the seriousness of the criminal charges notwithstanding petitioner was eligible for treatment by civil commitment under Washington's mental health statutes. We do not agree. There is case law support for the view that the seriousness of a criminal offense, such as the killing of one's parents or attempted murder, is properly considered in determining whether to decline jurisdiction. *Mikulovsky v. State*, 54 Wis. 2d 699, 196 N.W.2d 748 (1972); *State v. Hogan*, 212 N.W.2d 664 (Minn. 1973). In *In re Buchanan*, 433 S.W.2d 787, 789 (Tex. Civ. App. 1968), the court said:

The seriousness of the offense of murder is sufficient to justify the Juvenile Court in determining that the welfare of the community requires criminal proceedings as provided in subsection (g).

That the rule described involving serious offenses is not an unreasonable one is evidenced by the large number of statutes that divest a juvenile court of jurisdiction over certain serious offenses. These include Colorado, Colo. Rev. Stat. Ann. 22-8-1 (3) (1963); Delaware, Del. Code Ann. tit. 10, §§ 957, 1159 (1953); Florida, Fla. Stat. Ann. § 39.02(5)(c) (1974); Louisiana, La. Rev. Stat. Ann. § 13:1570 (Supp. 1974); Maryland, Md. Ann. Code § 4-507 (1974); Mississippi, Miss. Code 1972 § 43-21-31; Nevada, Nev. Rev. Stat. 62.050, .060 (1973); West Virginia, W. Va. Code § 49-5-3 (1966).

No doubt eligibility for civil commitment under our mental health statutes is relevant in determining whether the juvenile court has resources adequate to care for a juvenile delinquent so that he may be rehabilitated. We see no reason for holding such eligibility should be the sole and controlling factor. The *Kent* criteria on exercising discretion to decline jurisdiction,[2] accepted in Washington (*State v. Williams*, 75 Wn.2d 604, 453 P.2d 418 (1969)), include eight relevant factors. The seriousness of the offense, whether the protection of the community requires decline of jurisdiction, and whether the offense was committed in an aggressive, violent, premeditated and willful manner, are expressly mentioned. All eight factors need not be present.

▇ The decline order stands if the factors present substantially support the decline order. *State v. Williams, supra.* In reviewing the factors present, we look to the

---

[2]These criteria were promulgated by the juvenile court judge in the District of Columbia as a policy memorandum dated November 30, 1959. The memorandum had been rescinded at the time *Kent* was decided. *Kent v. United States*, 383 U.S. 541, 546 n.4, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966). Although these criteria were not expressly adopted by *Kent*, the fact that they were included in an appendix to the court's opinion suggests it is appropriate to refer to these criteria as *Kent* criteria to be followed in juvenile court waiver proceedings.

entire record. Undisputed evidence therein, even though not the subject of a finding, will be treated as facts in the case to support the conclusions. *See LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972).

Largely undisputed evidence in the record, although not the subject of findings, showed petitioner had a long criminal record; he used controlled substances; he was a threat to others; and he would be required to receive continuous psychiatric treatment to effect his cure. One psychiatrist testified the period required was 5 years or more; other testimony estimated a lesser period. The likelihood of reasonable rehabilitation is one of the eight factors described in the *Kent* criteria. There was evidence psychiatric treatment facilities were available if the juvenile court retained jurisdiction until the juvenile reached the age of 21 years (now 18 years). *In re Carson*, 84 Wn.2d 969, 530 P.2d 331 (1975). There was also evidence the juvenile would or might need such treatment even after the juvenile court lost jurisdiction over him. The evidence also showed if the juvenile was convicted he would be eligible to receive psychiatric treatment even after he reached 21 years (now 18 years). We find no abuse of discretion; the decline order is supported by the findings and also by other substantially uncontradicted evidence. *See Hazell v. State*, 12 Md. App. 144, 277 A.2d 639 (1971); *State v. Williams, supra.*

ADEQUACY OF FINDINGS

JuCR 6.4 requires the juvenile court judge in a decline of jurisdiction case to make "written findings of fact and conclusions of law in support of its decision." The findings here do not contain all the findings that might have been entered to support the decline order. However, as already pointed out, they contain enough to support the appealed order either alone or in combination with other evidence not the subject of specific findings of fact.

EX PARTE COMMUNICATION BY THE TRIAL JUDGE

Petitioner contends the court consulted with others outside the presence of counsel concerning the merits of the case. Near the end of the hearing on May 24, 1974, the court

notified counsel that he would continue the hearing until June 3, 1974, during which time he would make inquiry concerning treatment facilities available to petitioner if jurisdiction was retained. Petitioner made no objection to the court doing so. Instead, through his counsel, he first raised the objection at the June 3, 1974, hearing after learning of the court's inquiries from the King County prosecutor's office. Assuming arguendo the court's ex parte inquiries should not have been made, petitioner's objection thereto was not timely asserted. The time to have objected in order to avoid the implication of consent by counsel, was at the May 24, 1974, hearing after the court announced his intention to make inquiries concerning treatment facilities available. That petitioner waived his objection is supported by the rationale of *State v. Van Auken*, 77 Wn.2d 136, 143, 460 P.2d 277 (1969); *Williams & Mauseth Ins. Brokers, Inc. v. Chapple*, 11 Wn. App. 623, 524 P.2d 431 (1974); *Brauhn v. Brauhn*, 10 Wn. App. 592, 518 P.2d 1089 (1974); *State v. Stott*, 4 Wn. App. 494, 483 P.2d 162 (1971).

JUDGE'S QUESTIONING AT HEARING

 Petitioner contends the court prevented him from cross-examining the probation officer testifying on behalf of the State and interfered with the questioning of the witness by a somewhat extensive questioning of his own. *Dennis v. McArthur*, 23 Wn.2d 33, 38, 158 P.2d 644 (1945), states:

That the court has wide discretionary powers in the trial of a cause and is not prohibited from questioning a witness, is beyond controversy.

The record fails to show petitioner was denied the right to question any witness after requesting an opportunity so to do, or that petitioner objected to the court questioning the witnesses as he did. Effective assistance of counsel was not denied.

Affirmed.

SWANSON, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied March 19, 1975.

Review denied by Supreme Court September 5, 1975.