[No. 3988-1.    Division One.    March 8, 1976.]

*In the Matter of the Welfare of* LENORE GAIL WILES. THE STATE OF WASHINGTON, *Respondent,* v. LENORE GAIL WILES, *Petitioner.*

*Philip J. Bertenthal* of *Northwest Washington Legal Services,* for petitioner.

*Robert E. Schillberg, Prosecuting Attorney*, and *Kathryn E. Trumbull, Deputy*, for respondent.

JAMES, J.—This appeal concerns the implementation of procedures provided by the Uniform Interstate Compact on Juveniles, RCW 13.24. Washington and Oregon are parties to the compact.

The minor, Lenore Gail Wiles, was born on April 25, 1958. Her mother, Mable Merlene Wiles, sought the aid of the Baker County, Oregon, Juvenile Court, alleging that Lenore was "beyond control." On November 5, 1974, Lenore was made a ward of the court and her care, custody, control, and guardianship were granted to the Children's Services Division of the Oregon Department of Human Resources.

On July 1, 1975, the Baker County Juvenile Court submitted a "Requisition for Escapee or Absconder" to the Snohomish County Juvenile Court. The requisition recited as the "circumstances of breach of the terms of probation or parole or escape from institution or agency" that "said child has been absent without permission from Villa St. Rose Home for Girls, Portland, Oregon, since May 11, 1975. She is believed to have absconded to Everett, Washington, with the help of her mother who recently moved there from Baker, Oregon."

Under Oregon law, a person under 18 years of age "[w]ho is beyond the control of his parents, guardian or other person having his custody; or . . . [w]ho has run away from his home" is a delinquent child. Ore. Rev. Stat. 419.476 (1) (b), (f) (1959). *State v. Harmon*, 225 Ore. 571, 358 P.2d 1048 (1961). Accordingly, the Oregon Juvenile Court proceeded under article 5 of the interstate compact. Article 5 establishes the procedures for the return of "delinquent" juveniles who have "absconded" from "probation or parole supervision" or who have "escaped" from "institutional custody." The procedures established by article 5 do not include any judicial determination as to "whether or not it is in the best interest of the juvenile to compel his return to

the state" as is required by article 4 for the requisitioning of juveniles "who [have] not been adjudged delinquent." However, it is required by article 5 that

[n]o delinquent juvenile detained upon [a detention order mandated by the presentation of a written requisition from a "demanding" state] shall be delivered over to the officer whom the appropriate person or authority demanding him shall have appointed to receive him, unless he shall first be taken forthwith before a judge of an appropriate court in the state, who shall inform him of the demand made for his return and who may appoint counsel or guardian ad litem for him.

Article 5 further provides that:

If the judge of such court shall find that the requisition is in order, he shall deliver such delinquent juvenile over to the officer whom the appropriate person or authority demanding him shall have appointed to receive him. The judge, however, may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding.

After Lenore was taken into custody pursuant to the Oregon requisition, she petitioned for a hearing to determine whether or not she should be returned to Oregon. The trial judge was persuaded that his sole function was to determine whether the Oregon requisition was "in order." He concluded that it was and that a further inquiry to determine whether a return to Oregon would best serve Lenore's welfare was beyond his jurisdiction.

We do not agree.

The paramount consideration in all child custody proceedings is the welfare of the child. *In re Russell*, 70 Wn.2d 451, 423 P.2d 640 (1967). While article 5 of RCW 13.24.010 provides only for a hearing "for the purpose of testing the legality of the proceeding," the entire "extradition" procedure provided by the compact is subject to the caveat that "all remedies and procedures provided by this compact shall be in addition to and not in substitution for other rights, remedies, and procedures, and shall not be in derogation of parental rights and responsibilities." RCW 13.24.010, article 2.

Lenore was brought to Snohomish County by her mother. It was her mother who initially sought the intervention of the Oregon Juvenile Court. Lenore was 17 years old when taken into custody by the Snohomish County Juvenile Court. As of that date, June 27, 1975, Lenore was within 9 months of reaching her majority. If Oregon's effort merely reflects an automatic bureaucratic reaction to an escape from institutional custody, it would not necessarily best serve Lenore's welfare that she be returned.

We hold that the trial judge erred in concluding that he had no discretion and that he was *required* to honor Oregon's requisition if he found it to be "in order." Consideration for Lenore's welfare requires the exercise of sound judicial discretion after a careful consideration of her present circumstances before ordering that she be returned to "institutional custody." *Accord, Application of Chin,* 41 Misc. 2d 641, 246 N.Y.S.2d 306 (1963).

Remanded.

WILLIAMS, C.J., and ANDERSEN, J., concur.