[No. 6159–1.   Division One.   June 19, 1978.]

*In the Matter of the Welfare of*
PATRICK ALAN SCHY.

*Jean Rietschell* of *Institutional Legal Services,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Marilyn Showalter, Deputy,* for respondent.

FARRIS, C.J.—Patrick Schy appeals from an order returning him to the state of Kansas pursuant to a requisition under the interstate compact on juveniles, RCW 13.24.

Schy was found to be a delinquent on March 16, 1976. As a condition of his probation, he was placed at Kamp Kachess, from which he absconded on March 31, 1976. As a result, he was committed to Cascadia in November 1976, and later placed at Naselle Youth Camp on November 22, 1976. He absconded from Naselle in March of 1977, and in May 1977, authorities in Washington were notified by Kansas authorities that Schy was being held on suspicion of several burglaries. He escaped from a Kansas detention center, and his whereabouts were unknown until he was arrested in Seattle in October 1977. Shortly thereafter, Kansas officials sent a requisition under the interstate compact on juveniles for Schy's return. Based on the requisition, a hearing was held in King County Superior Court. No challenge was made to the legality of the proceeding under RCW 13.24.010. The court found that the welfare of Patrick Schy would best be served by ordering his return to Kansas. Schy appeals.

Schy raises the following issues: (1) whether the trial court abused its discretion in directing that he be returned to the state of Kansas; (2) whether due process of law requires this court to set standards to serve as guidelines which a juvenile court may consider in determining whether it is in the best interest of the child to be returned to the demanding state; (3) whether under the evidence submitted, Schy's best interest was properly considered.

First, counsel contends that the order granting the requisition for Schy's return to the state of Kansas was an abuse of discretion. RCW 13.24.010, art. 4 states in part:

Upon the receipt of a requisition demanding the return of a juvenile who has run away, the court or the executive authority to whom the requisition is addressed shall issue an order to any peace officer or other appropriate person directing him to take into custody and detain such juvenile. Such detention order must substantially recite the facts necessary to the validity of its issuance hereunder. No juvenile detained upon such order shall be delivered over to the officer whom the court demanding him shall have appointed to receive him, unless he shall first be taken forthwith before a judge of a court in the state, who shall inform him of the demand made for his return, and who may appoint counsel or guardian ad litem for him. If the judge of such court shall find that the requisition is in order, he shall deliver such juvenile over to the officer whom the court demanding him shall have appointed to receive him. The judge, however, may fix a reasonable time to be allowed for the purpose of testing the legality of the proceeding.

In *In re Wiles,* 15 Wn. App. 61, 547 P.2d 302 (1976), we held that in addition to the requirements of RCW 13.24-.010, art. 4, the trial court must exercise sound judicial discretion and consider the present circumstances to determine if it is in the best interest of the juvenile to be returned to the demanding state. The discretion exercised by a juvenile court is reversible for manifest abuse, *i.e.,* when "the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972); *In re Burtts,* 12 Wn. App. 564, 530 P.2d 709 (1975). In his oral ruling the trial judge stated:

I first have to determine as to the validity of the Requisition, and it is my understanding that that's agreed to be in my examination . . . I would also indicate that it is valid.

Then as to the question of the best interest of Patrick. He's just turned 17—he has, by his mother, been indicated to be out–of–control, certainly, at least, while he was in Nasalle [*sic*], run twice while he was put in our juvenile system. I can't find that our juvenile system offers him something better in than that it's in his better interest to remain there or with the family. In view of a

request from a foreign jurisdiction, which has, I must assume, equally competent, perhaps even better facilities than Washington, and they also indicate that there are a number of charges that they have pending in terms of delinquency and in terms of petitioning for a waiver of his juvenile status to be treated as an adult. I note 6 counts of theft, apparently by burglary, are alleged in the Requisition. From what I hear of how his interests have been afforded in Washington, I must find that there is nothing to indicate that his best interest is served by remaining in Washington, or remaining with, what otherwise is a good family unit, with him as an exception. So, in weighing that factor, I grant the Requisition and direct that he be held to be returned to Kansas at the expense of the Kansas authorities, pursuant to their Requisition.

While this appeal was pending, a second hearing was held in superior court on April 18, 1978, to reconsider whether it was in the best interests of Patrick Schy that he be returned to the state of Kansas. At that hearing, the court considered the affidavit of Rolf Peterson, a social worker at Cascadia Diagnostic Center, who stated that Schy was making substantial progress and recommended that he continue in the Washington juvenile system. In ruling on the motion, the trial court stated:

The difficulty of both your request and with the original hearing is that when you consider the welfare of the child, you cannot consider it in a vacuum, especially when you're dealing with two states who have competing interests. I had no testimony relative to what Kansas had available for the welfare of the child or that the Washington system had availed itself of all possibilities. I really do not see that his remaining in the care of Cascadia and not escaping again while he's under close supervision is evidence that his welfare has been promoted while there, or that his continuance within our system and not under that close scrutiny would be effective and to his benefit. I have no way of making that determination, other than judging from the facts of his admission concerning a large number of burglaries, the fact that he is wanted in another state for at least four or six of those charges—I forget the precise number now—but that fact, I think, tips the balance of the scales in favor of the

community and the community that has the strongest interest is Kansas. The welfare of the child will not be derogated in any way, from the evidence before me, by his being transferred to Kansas. If his welfare is to be promoted, I need some evidence to show in what way it will be promoted and that has not been presented.

The record satisfies us that the best interests of Patrick Schy were considered. We find no abuse of discretion in the trial court's order that he be returned to the state of Kansas.

■ It is argued that in the absence of any standard or guidelines set forth in *In re Wiles, supra,* the action of the trial court was arbitrary and capricious and in derogation of Schy's right to due process of law. It is further argued that the same "determinative factors" set forth by the United States Supreme Court in the appendix to *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966) should be considered in deciding whether to transfer jurisdiction. The eight criteria mentioned in *Kent* have been adopted in declination hearings. *State v. Williams,* 75 Wn.2d 604, 453 P.2d 418 (1969). *Accord, In re Burtts, supra.* The failure of the trial court to extend those specific guidelines to the Interstate Compact on Juveniles did not make a well reasoned decision arbitrary and capricious.

Affirmed.

JAMES and RINGOLD, JJ., concur.