[No. 44202. En Banc. November 10, 1976.]

MARK VOVOS, ET AL, *Petitioners*, v. WILLIAM J. GRANT, *Judge of the Spokane County Juvenile Court, Respondent.*

*Francis Conklin* and *Fredrickson, Maxey, Bell & Allison, Inc., P.S.,* by *David W. Henault* and *Carl Maxey,* for petitioners.

*Donald C. Brockett, Prosecuting Attorney,* and *Jerry Neal, Deputy,* for respondent.

*Gary B. Wiggs* and *John L. Jarrett* on behalf of Spokane County Legal Services, amici curiae.

HOROWITZ, J.—Petitioners seek review by extraordinary writ of an order of the juvenile court of the Spokane County Superior Court, permitting county law enforcement agencies to fingerprint and photograph juveniles arrested for certain enumerated crimes without obtaining advance consent on an individual basis from the juvenile court. We hold RCW 13.04.130 permits the juvenile court to consent to the fingerprinting and photographing of a juvenile only upon prior individual review in each instance. We therefore vacate the order of the juvenile court.

On January 15, 1976, Judge William Grant of the Spokane County Superior Court, in his capacity as juvenile court judge, entered the following order:

ORDER AUTHORIZING FINGERPRINTING AND PHOTOGRAPHING OF JUVENILE OFFENDERS

This Court, having witnessed the serious, rapid increase in juvenile crime, both in Spokane County and elsewhere, it is the finding of this Court that law enforcement agencies are in need of all possible legal and effective tools with which to properly investigate criminal juvenile activity, and that there is a need for authority being given to these agencies, in serious cases, to fingerprint and photograph alleged juvenile offenders, and accordingly,

IT IS HEREBY ORDERED that the consent and approval of this Court is given to law enforcement agencies to fingerprint and photograph juveniles taken into custody in the following cases:

> Homicide
> Kidnapping
> Robbery
> Burglary
> Sexual Assault
> Serious Physical Assault, including purse snatching

ADDITIONALLY, the law enforcement agencies are hereby authorized and consent is hereby given to fingerprint and photograph in such serious cases as may be deemed appropriate in the judgment of the arresting

officer, with the approval of the Juvenile Court in each instance.

The fingerprints and photographs taken pursuant to this Order are solely for the use of law enforcement agencies, and for no other purpose are they to be disclosed.

On January 23, 1976, petitioner Mark Vovos, a parent of four children resident in Spokane County, and petitioner Spokane County Public Defender filed a petition for a writ of review or in the alternative for a writ of prohibition with the Court of Appeals to review the action of the juvenile court. The petition alleges the order is beyond the jurisdiction of the juvenile court, is a violation of the constitutional rights of all juveniles taken into custody at the Spokane County Juvenile Detention Center, and is contrary to RCW 13.04.130.

At a preliminary hearing before the Court of Appeals, Division Three, on February 10, 1976, the issue of the petitioners' standing was argued. The respondent conceded the standing of the Spokane County Public Defender. However, this concession was apparently made under the misconception that a 14-year-old juvenile fingerprinted pursuant to the juvenile court's order had been made party to the petition and was being represented by the public defender. At the end of the hearing, the chief judge ruled that all parties to the petition had established standing. The case was then transferred to this court pursuant to RCW 2.06.030 (d).

■■ The question of the standing of petitioners has not been raised anew in this court by the respondent. However, in view of the importance of the standing of the public defender in this case, and the apparent misconception below of the facts on this point, we wish to briefly address this question of standing. A person has standing to challenge a court order or other court action if his protectable interest is adversely affected thereby. The interest shown cannot be simply the abstract interest of the general public in having others comply with the law. *Herrold v. Case*, 42 Wn.2d 912, 916, 259 P.2d 830 (1953); *State ex rel. Gebhardt v. Superior Court*, 15 Wn.2d 673, 680, 131 P.2d

943 (1942); *see* K. Davis, *Administrative Law Text* § 22.08 (3d ed. 1972).

An interest in the subject matter of the litigation sufficient to confer standing may be established either in a personal or a representative capacity. *See, e.g., United States v. Raines*, 362 U.S. 17, 27, 4 L. Ed. 2d 524, 80 S. Ct. 519 (1960) (Attorney General authorized to institute proceeding for preventive relief when any citizen denied certain voting rights); *Crescent Park Tenants Ass'n v. Realty Equities Corp.*, 58 N.J. 98, 275 A.2d 433 (1971) (tenants association may bring suit on behalf of aggrieved tenants); Restatement (Second) of Trusts § 177 (1959) (trustee's duty to redress tort with respect to trust property and enforce contract claim of trust against third party). We hold the Spokane County Public Defender, in his representative capacity of legal counsel for indigent and certain other juveniles brought before the Spokane County Juvenile Court, has standing to challenge the order. RCW 36.26.070 states the public defender "must represent" on court appointment certain indigent persons arrested or charged with a crime. JuCR 7.2(b)-(c) describes his duty in this regard in juvenile court proceedings in which he represents indigent juveniles and juveniles whose welfare requires an attorney. In fact, the affidavit of the assistant public defender, on behalf of the petitioning public defender, states that in his capacity as such an assistant specifically assigned to practice in juvenile court, "he represents more than one-half of all juveniles before the court both on initial fact finding hearings and those juveniles on probation."

Had individual juveniles already fingerprinted or photographed joined in the original petition, their right to the return of fingerprints or photographs unlawfully taken (*see Eddy v. Moore*, 5 Wn. App. 334, 338, 487 P.2d 211, 46 A.L.R.3d 889 (1971)), and the consequent prevention of such indicia of misconduct from becoming a part of their police or court record, would give them a direct and sub-

stantial interest in the subject matter of this suit, and would suffice to confer standing.

However, in view of the statutory duties of the public defender to represent juveniles before the juvenile court, and the difficulty juveniles would have to vindicate their rights on their own (*see In re Ivarsson*, 60 Wn.2d 733, 735, 375 P.2d 509 (1962)), we find it particularly appropriate for the public defender to file this petition in his public capacity. The public importance of the issue presented, and the direct effect its resolution will have upon all juveniles in Spokane County who become subject to the juvenile court's jurisdiction, reinforce our conclusion. Appropriate is the theory of standing adopted in *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 96, 459 P.2d 633 (1969), which is consistent with the result we reach here.

> Where a controversy is of serious public importance and immediately affects substantial segments of the population and its outcome will have a direct bearing on the commerce, finance, labor, industry or agriculture generally, questions of standing to maintain an action should be given less rigid and more liberal answer.

Understandably, in view of the vital interest to all juveniles in Spokane County in a speedy determination of the legality of the juvenile court's order, the public defender chose to bring suit to challenge the order only 8 days after it was entered and before the fingerprinting or photographing of any juvenile under its authority. This was proper. *Doe v. Bolton*, 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739 (1973) (abortion law may be challenged by physicians despite no prosecution of physicians, against whom abortion law directly operates).

Since we hold the public defender has standing to attack the order under review, it is unnecessary to decide whether the other petitioner likewise has standing.

On the merits, we agree with petitioners that the order is impermissible under the terms of RCW 13.04.130, and is

contrary to the intent, purpose, and spirit of RCW 13.04 (Juvenile Court Law).

RCW 13.04.130 reads as follows:

> Neither the fingerprints nor a photograph shall be taken of any child under the age of eighteen years taken into custody for any purpose without the consent of juvenile court.

The question presented is whether this "consent" must always be obtained by law enforcement agencies separately for each juvenile taken into custody, or whether a blanket consent like the one in question, permitting in advance the fingerprinting or photographing of all juveniles taken into custody in connection with certain categories of crimes, is permissible as well. We hold that RCW 13.04.130 does not permit a blanket consent, and requires that consent be obtained only upon an individual basis.

The history of RCW 13.04.130 indicates the "consent" contemplated is to be granted on a case-by-case basis by the juvenile court. Prior to 1945, there existed in Washington no statute governing fingerprinting of either adults or juveniles. The police, therefore, under the decisional law, had independent authority to fingerprint and photograph juveniles as well as adults, within the restrictions of the Fourth Amendment.

> In those states lacking special statutory treatment for fingerprinting and photographing in children's cases, the police have the power and occasionally the duty to carry on these operations exactly as they would in adult cases.

M. Paulsen & C. Whitebread, *Juvenile Law and Procedure* 101 (Juvenile Justice Textbook Series 1974); *see United States v. Kelly*, 55 F.2d 67 (2d Cir. 1932); *In re Fingerprinting of M.B.*, 125 N.J. Super. 115, 124, 309 A.2d 3 (1973); *cf. Davis v. Mississippi*, 394 U.S. 721, 727-28, 22 L. Ed. 2d 676, 89 S. Ct. 1394 (1969).

 Presumably, the legislature was aware of this common-law rule when it enacted RCW 13.04.130 in 1945 (Laws of 1945, ch. 132, § 2, p. 340), and intended a change in the rule with respect to juveniles. *See State ex rel.*

*Madden v. PUD 1*, 83 Wn.2d 219, 221-22, 517 P.2d 585 (1973) (state of law prior to adoption of statute considered in ascertaining legislative intent). To construe RCW 13.04.130 as permitting blanket consent to fingerprinting and photographing "allows the juvenile judge to permit the exercise by police officers of a discretion which the law has specifically lodged in him." National Juvenile Law Center, *Law and Tactics in Juvenile Cases* 161 (2d ed. 1974). Such a result is clearly contrary to the intent and purpose of the statute.

■ Our construction of RCW 13.04.130 is also supported by considerations of public policy. Foremost is the protection of each juvenile from the harmful effects of unnecessary police and court records. *McKeiver v. Pennsylvania*, 403 U.S. 528, 551-52, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971) (White, J., concurring); M. Paulsen & C. Whitebread, *supra* at 99. Concerned commentators agree that public policy requires that the needed consent by the juvenile court to the child being fingerprinted or photographed be given upon a case-by-case basis. Model Rules for Juvenile Court rule 43, Comment (1969); *Advisory Council of Judges of the National Probation and Parole Association and National Council of Juvenile Court Judges, Guides for Juvenile Court Judges* 32-33 (1957). Commenting upon Ore. Rev. Stat. § 419.585 (1975), which requires "consent of the juvenile court" before a child may be fingerprinted or photographed, the Committee on Continuing Legal Education of the Oregon State Bar states the matter well:

> Once charged, the court may order photographing and fingerprinting if an adequate showing is made that there is a connection between the child and the offense. Once a child is in custody on one charge, it is possible to obtain an order to fingerprint or "mug" if the court is satisfied there is some basis for associating the child with other offenses.
>
> The purpose of the additional protection afforded by ORS 419.585 is safeguarding the child from unwarranted

indicia of misconduct becoming a part of police and court records.

Oregon Juvenile Law Handbook § 2.15 (1970).

The protection afforded juveniles by individual review prior to photographing or fingerprinting is particularly important in Washington, which has no "comprehensive system for the sealing or expunction of juvenile arrest records." *Monroe v. Tielsch*, 84 Wn.2d 217, 228-29, 525 P.2d 250 (1974) (Finley, J., concurring and dissenting).

In addition, our construction of RCW 13.04.130 is in keeping with the purpose of the juvenile court—individualized treatment and justice for the juvenile offender, rather than punishment for a crime. *In re M.*, 3 Cal. 3d 16, 31, 473 P.2d 737, 89 Cal. Rptr. 33 (1970); *State ex rel. Pulakis v. Superior Court*, 14 Wn.2d 507, 522, 128 P.2d 649 (1942); *In re Burtts*, 12 Wn. App. 564, 566-69, 530 P.2d 709 (1975); R. Garff, *Handbook for New Juvenile Court Judges* 6 (Juvenile Justice Textbook Series 1973); *see* RCW 13.04.140 (care, custody, and discipline of delinquent children shall approximate that which should be given by parents); *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 259-60, 407 P.2d 440 (1965).

In *In re M.*, *supra*, the California Supreme Court rejected a trial court's policy of detaining all children charged with the sale of illegal drugs regardless of the specific facts in each individual case supporting the release of the juvenile. The Supreme Court held the juvenile court "cannot establish mechanical 'policies' for automatic detention," and that such a "mechanized, mass treatment of offenders" violates the policy of the juvenile court that it act in the best interests of the child.

> The basic predicate of the Juvenile Court Law is that each juvenile be treated as an individual. The whole concept of our procedure is that special diagnosis and treatment be accorded the psychological and emotional problems of each offender so that he achieves a satisfactory adjustment. Nothing could be further from the spirit

of the law than the absorption of the individual into a stereotype.

*In re M., supra* at 31.

The order of the juvenile court is vacated.

STAFFORD, C.J., ROSELLINI, HUNTER, and HAMILTON, JJ., and RYAN, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—I dissent. No constitutional issues are present and the statute clearly allows fingerprints and photographs to be taken of juveniles taken into custody, with the consent of the juvenile court. RCW 13.04.130. Full consent and approval was given in the order of January 15, 1976, of the juvenile court judge. For this court to require in the name of "individualized treatment" that the police must receive a further confirmation of a decision already clearly and specifically made is an inappropriate intrusion into the conduct of the affairs of the juvenile court in Spokane County.

The majority requires the Spokane County authorities to engage in a useless act, a charade, and to adopt a procedure which in no way affords any further protection to the juvenile but instead puts unwarranted burdens on both the police and the juvenile court. While there can be legitimate questions as to whether fingerprinting and photographing of juveniles will accomplish the goal of combating juvenile criminal activity, absent a constitutional ban, courts may use the authority granted by the legislature. No constitutional provision or legislative act which would bar this action has been shown nor does the order of the juvenile court providing for fingerprinting and photographs for specified offenses shift discretion from the court to the police.

The petition should be denied.

BRACHTENBACH, J., and HALE, J. Pro Tem., concur with DOLLIVER, J.