[No. 16716-0-III.    Division Three.    April 14, 1998.]
ELINORE BIERMANN, *Appellant,* v. THE CITY OF SPOKANE, ET AL., *Respondents.*

BROWN, J., dissents by separate opinion.

*Frederick J. Dullanty, Jr., Kelly A. Nolen,* and *Jody M. McCormick* of *Witherspoon, Kelley, Davenport & Toole, P.S.,* for appellant.

*James C. Sloane, City Attorney,* and *Michael J. Piccolo, Assistant*; and *Michael F. Connelly,* for respondents.

SCHULTHEIS, C.J. — In 1995, Elinore Biermann complained to the City of Spokane about Paul and Suzanne Markham's construction of a garage in violation of certain provisions of the SPOKANE MUNICIPAL CODE. The City issued three stop-work orders and threatened the Markhams with criminal action, but construction continued. The Markhams asked for a certificate of compliance and a City of Spokane Hearing Examiner granted the certificate. The superior court affirmed the decision because Ms. Biermann lacked standing. Ms. Biermann now appeals the superior court's ruling. We conclude that Ms. Biermann had standing and the issuance of the certificate of compliance is unsupported. We therefore reverse.

## FACTS

The Markhams applied for a building permit to build a 1,200 square foot garage in 1989. The Markhams' neighbor, Ms. Biermann, agreed to sign a side-yard waiver because

the completed garage would encroach on her property. The City denied the permit because the plans exceeded the 1,000 square foot limitation on such structures. On June 28, 1993, the City issued a permit to construct a one-story, 1,008 square foot garage. Although the SPOKANE MUNICIPAL CODE (SMC) states that building permits expire after 180 days, the Markhams did not begin construction until May 1994, over 120 days after the permit expired.

During construction, the City conducted a number of inspections of the structure and did not report any code violations. Ms. Biermann, however, notified the Markhams and the City Building Department of code violations, as well as the lack of a valid building permit. The City issued stop-work orders in July and August 1995 and apprised the Markhams of the following violations: (1) the two story, 30- by 40-foot garage exceeds the one story, 28- by 36-foot dimensions specified in the building permit; (2) the area of the garage violates the accessory structure limit of 1,000 square feet; (3) the garage violates the 20-foot corner setback and is less than 5 feet to the adjacent lot; and (4) the 50 percent maximum rear-yard coverage may also be exceeded. The building official also found other building code violations, including unprotected openings and lack of parapet and firewalls. The Markhams continued construction. In response to their disregard of the orders, the City Attorney threatened the Markhams with possible criminal charges if they refused to correct the code violations or apply for a certificate of compliance.

The Markhams applied for a certificate of compliance on July 10, 1996. After a hearing, the examiner granted the application and issued the certificate. Ms. Biermann appealed to superior court pursuant to the Land Use Petition Act. *See* RCW 36.70C.040. On April 10, 1997, the court ruled that Ms. Biermann did not have standing to object to the Markhams' lack of a valid building permit and affirmed

the examiner's decision. Ms. Biermann now appeals that decision.

ANALYSIS

1. Standing. Ms. Biermann challenges the superior court's ruling that she lacked standing to assert the Markhams' lack of a valid building permit as a basis to challenge the certificate of compliance. She relies on the Land Use Petition Act as authority to challenge the decision. The City argues that it alone has the authority to issue building permits, and, as a third party, Ms. Biermann cannot challenge the department's decisions.

■■ Standing to challenge a court order or other court action requires a protectable interest that is adversely affected by such order or action. *Vovos v. Grant*, 87 Wn.2d 697, 699, 555 P.2d 1343 (1976); *In re Marriage of T.*, 68 Wn. App. 329, 335, 842 P.2d 1010 (1993). "The interest must be more, however, than simply the abstract interest of the general public in having others comply with the law." *T.*, 68 Wn. App. at 335; *see Vovos*, 87 Wn.2d at 699. Ms. Biermann's health, safety and comfort are directly affected by this garage. The Land Use Petition Act was intended to protect those interests. RCW 36.70C.060(2). That section grants standing to bring a land use petition to:

> Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision. A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:
>
> (a) The land use decision has prejudiced or is likely to prejudice that person;
>
> (b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
>
> (c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060(2). Ms. Biermann has standing to complain about the absence of a valid building permit and the code violation here.

██ ██ 2. Issuance of the Certificate of Compliance. In reviewing an administrative decision, we stand in the same position as the superior court. *Wilson v. Employment Sec. Dep't*, 87 Wn. App. 197, 201, 940 P.2d 269 (1997). We base our review on the administrative record. *Snohomish County v. State*, 69 Wn. App. 655, 664, 850 P.2d 546 (1993), *review denied*, 123 Wn.2d 1003 (1994). We review factual findings under the substantial evidence standard, and conclusions of law de novo. *Wilson*, 87 Wn. App. at 201-02.

Under the Land Use Petition Act, the reviewing court may grant relief from a local jurisdiction's decision if: (1) the decision is an erroneous interpretation of the law; (2) the decision is a clearly erroneous application of the law to the facts; (3) the decision is not supported by substantial evidence; (4) the land use decision is outside the authority or jurisdiction of the body or officer making the decision; or (5) the decision violated the constitutional rights of a party seeking relief. RCW 36.70C.130(1)(b)-(f).

██ An application for a certificate of compliance must include: "A copy of the building permit or other approval and other data necessary to demonstrate that the building was erected in good faith and after all reasonable efforts to comply with the code." SMC 11.02.0360(C)(2)(d). The burden of proving good faith and reasonable efforts to comply rests with the petitioner—the Markhams. *Douglass v. City of Spokane*, 25 Wn. App. 823, 829, 609 P.2d 979, *review denied*, 94 Wn.2d 1006 (1980).

The Markhams' building permit expired before their construction began. The examiner concluded nonetheless that the City's inspections extended the deadline. The SMC requires that a person holding a current permit file a written request for additional time. SMC 11.01.203(B). The

Markhams made no request. The City nonetheless justified the extension by an unwritten and, so far as this record shows, unpublished informal policy.

■ A legislature may delegate authority when it has provided "(1) appropriate standards to define what is to be done, and what administrative body is to accomplish it, and (2) procedural safeguards to control arbitrary administrative action." *State v. Ermert*, 94 Wn.2d 839, 847, 621 P.2d 121 (1980); *Polygon Corp. v. City of Seattle*, 90 Wn.2d 59, 578 P.2d 1309 (1978). The City's unpublished informal policy satisfies neither of these requirements.

The SPOKANE MUNICIPAL CODE sets out the procedure for requesting a building permit time extension. SMC 11.01.203. Nowhere in that section or SMC Title 11 is the power to modify that mandate delegated to the Department of Construction Services. The "unwritten policy" is an invalid delegation of power and the hearing examiner's reliance upon it was improper. The Markhams did not have a valid building permit for the garage.

Moreover, we do not believe that the examiner's findings support the conclusion of good faith. The findings summarize the problems in construction of the garage, including the City's failure to notice and cite code violations and Mr. Markham's admission that he gave the contractor the wrong plans. The examiner concluded that in the absence of direct evidence of bad faith, the omissions show that the Markhams proceeded in good faith. That is not the test. *See Douglass*, 25 Wn. App. at 829 (party requesting a certificate of compliance bears the burden of proving appropriateness of certificate).

■ Ms. Biermann does not have the burden of proving bad faith. The Markhams must show good faith. Here, given the code violations, an expired building permit, and the continuing disregard of the stop-work orders, we conclude they cannot. Mr. Markham may have inadvertently given the wrong plans to his contractor. But even during the early stages of construction, the difference between the proposed one-story structure and a two-story ga-

rage taking shape would have been apparent. The finding of good faith is not supported by substantial evidence. *In re Estate of Shaughnessy*, 104 Wn.2d 89, 95, 702 P.2d 132 (1985).

We also disagree with the examiner's finding of no adverse impact. The examiner found that certain negative impacts on the neighboring property could be mitigated. The examiner also discounted Ms. Biermann's complaints of light and air blockage based on his personal visit to the property. But there is no indication of how these effects can be mitigated. And given the height and width of the building, we conclude that this finding is not supported by substantial evidence.

## CONCLUSION

The superior court erred in affirming the examiner's decision to issue a certificate of compliance to the Markhams. Ms. Biermann had standing to contest the validity of the building permit. Because the Markhams failed to meet the criteria necessary for issuance of a certificate of compliance under SMC 11.02.0456, we reverse the examiner's decision to issue the certificate.

SWEENEY, J., concurs.

BROWN, J. (dissenting) — The Spokane County Superior Court affirmed a hearing examiner's decision to issue a certificate of compliance for a garage under SPOKANE MUNICIPAL CODE (SMC) 11.02.0456 and denied the subsequent petition brought by the aggrieved neighbor under RCW 36.70C, the Land Use Petition Act. Two of three criteria for the certificate are challenged: (1) Written documentation establishes that all necessary permits were issued and inspections conducted, and (2) approval of the certificate of compliance will not adversely affect the neighboring property or the area. The necessity criterion is not challenged. Because substantial evidence supports the hearing officer's findings

of fact, the facts support the conclusions of law, no erroneous interpretation or application of the law exists in this record, and the decision is not outside the authority or jurisdiction of the hearing officer, I would affirm.

## ADDITIONAL FACTS

Paul and Suzanne Markham said (and the hearing examiner after examining the evidence apparently found) they mistakenly gave their contractor the wrong set of plans for the construction of a 1,200 square foot structure. The City did not object to the tardy initiation or continuation of construction and inspected the work in progress without reporting any code violations or objection to the larger structure.

The court's April 10, 1997 letter affirmed the examiner's decision and ruling that (1) all necessary permits were issued and all inspections conducted on the garage and (2) approval of the certificate of compliance will not adversely affect the neighboring property or the surrounding area. Further, the trial court agreed with the examiner that the issue "[w]hether Markhams had a valid building permit is an issue between them and the City. As a third party to the building permit process, [Elinore] Biermann cannot assert this jus tertii."

## ANALYSIS

A. Issues and Standards for Review. I agree the key issue is whether the trial court erred when it affirmed the examiner's decision to issue the certificate of compliance. Ms. Biermann challenges just two of the three legal conclusions required in SMC 11.02.0456(A): (1) Written documentation established all necessary permits were issued and (2) approval of the certificate of compliance will not adversely affect her neighboring property or the area. Significantly, she does not contest the third criterion that approval of the certificate is necessary to relieve the Markhams of a substantial practical or economic hardship. Issues of law are reviewed de novo; issues of fact are reviewed under the

substantial evidence test. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29, 891 P.2d 29 (1995). Review of mixed questions of law and fact are reviewed as did the superior court in its appellate capacity. *Id.* Our concerns under the Land Use Petition Act (LUPA) are (1) erroneous interpretations of the law; (2) facts not supported by substantial evidence; (3) clearly erroneous applications of the law to facts; and (4) decisions outside the authority or jurisdiction of the examiner. RCW 36.70C.130(1)(b)-(e). Applying these standards to the record, there is no error.

B. Written Document Conclusion. Preliminarily, Ms. Biermann does not have standing to contest the *issuance* or validity of the Markhams' June 1993 building permit in this proceeding because she is a third party to the issuance process. This does not mean, however, she is prevented from contesting the examiner's conclusions because she claims to be an aggrieved person and adversely affected by the land use decision. RCW 36.70C.060. The City recognizes this point in its response brief at page 18. Regardless, the regularity of the City's process for issuing or extending the June 1993 building permit is not a material issue before this court because irregularity and illicit construction are the very reasons for the compliance process. The examiner aptly observed at page 6 of his decision: "Of course, if everyone did know the law and complied with the law, a certificate of compliance would never be necessary. The reason for this request [for a certificate of compliance] is that mistakes were made on behalf of both the applicant and the City and, therefore, this application was necessary." Also, a valid permit is not a necessity for an application for a certificate of compliance because of the disjunctive language of SMC 11.02.0360(C)(2)(d); a point next discussed.

SMC 11.02.0155 allows the issuance of a certificate of compliance for the purpose of rendering licit a building that would otherwise have code violations, if the criteria of SMC 11.02.0456 can be met. The first critical question is

whether the trial court erred in affirming the examiner's first legal conclusion that "[w]ritten documentation establishes that all necessary permits were issued and inspections conducted" or in finding substantial evidence existed to support that conclusion. An application for a certificate of compliance must include:

> A copy of the building permit *or* other approval and other data necessary to demonstrate that the building was erected in good faith and after all reasonable efforts to comply with the code.

SMC 11.02.0360(C)(2)(d) (emphasis added). The petitioner has the burden of proving that a certificate of compliance is appropriate. *Douglass v. City of Spokane*, 25 Wn. App. 823, 829, 609 P.2d 979, *review denied*, 94 Wn.2d 1006 (1980). A certificate may be issued when "there has been a *good faith* violation which does not substantially frustrate the spirit of the zoning ordinance." *Id.* (emphasis added).

In view of the disjunctive language, it is evident from SMC 11.02.0360(C)(2)(d) and *Douglass* that the requirement of a valid building permit or any permit is not essential for an application for a certificate of compliance. Instead, the focus is (as categorically stated in *Douglass*) on the *good faith* of the applicant. Therefore, Ms. Biermann's jurisdictional concerns relating to the initial validity of the permit are misplaced because the form of permit is but one factor bearing on whether the Markhams proceeded in good faith. The examiner did not err concluding the Markhams proceeded in good faith after considering the Markhams' color of permit, the continued inspections, and the apparent blessing of the City. This would be true even if the City were mistaken in its policies or the Markhams' permit was technically illicit. Thus, the portion of the land use decision concluding the purpose of the petition requirement was to show evidence of a good faith violation was not an erroneous interpretation or application of law and was within the jurisdiction of the examiner. It was also within the fact-finding function of the examiner to

decide the predicate facts necessary to reach this conclusion. Our function is not to weigh the evidence or decide the facts or credibility of the witnesses, but to determine whether there is substantial evidence in the record to support the facts as found.

The examiner carefully delineated substantial factual evidence that supports his legal conclusion the garage was erected in good faith. Before beginning construction the record shows the Markhams duly applied for and received a building permit. Further, inspections were called for and conducted by the City without mention of the lapsed permit. The building official testified that permits could be retroactively extended up to 180 days; though no code citation could be provided. This testimony it is additional evidence of the applicant's good faith. Two more inspections occurred without incident relevant to the applicant's good faith. The inspection reports showed the footings and progress were "O.K." The record thus contains substantial facts to support the examiner's finding of good faith even though other inferences could be drawn from the record as suggested by Ms. Biermann. These portions of the record support the conclusion that written documentation establishes that all necessary permits were issued and inspections conducted. Therefore, the trial court did not err affirming the examiner's decision on the permit issue.

C. No Adverse Affect Conclusion. The examiner correctly noted most of the Markhams' neighbors are in favor of the certificate. Eighty-six letters, more or less, are listed as exhibits in the record favoring the Markhams. Just seven letters, including two from Ms. Biermann, one from her attorney, and two from neighbor Smith, are listed as exhibits opposing the certificate. The examiner had ample evidence in the record to conclude the neighbors favoring the certificate did not note any adverse impacts on their properties. Moreover, the record demonstrates the favoring neighbors supported the proposition the garage, as designed, will become an asset to the neighborhood and will be aesthetically pleasing.

The examiner identified and addressed Ms. Biermann's three primary concerns: (1) limitation on open space, light and air; (2) snow and rain draining off the garage; and (3) fire hazard due to proximity and lack of fire wall protection required by the UNIFORM BUILDING CODE. The examiner relied on evidence the second and third concerns could be mitigated by construction of a firewall on the north wall of the garage and a drain between the two garages. These findings are supported by Mr. Markham's statement that he can still construct a firewall and that he had installed the necessary drain. Moreover, the examiner's conditions for approval of the certificate of compliance included: (1) a new building permit; (2) a fire wall or other measures required by the Uniform Building Code and Uniform Fire Code on the north wall of the garage; and (3) submission of a report prepared by a licensed engineer demonstrating the adequacy of the drainage.

The examiner recognized "the primary unmitigated impact is the size of the garage and its impact upon [Ms. Biermann's] open space, light, and air." Additional to the exhibits and testimony, a site visit was conducted by the examiner prior to the issuance of the certificate of compliance. The examiner observed no feeling of enclosure, the offending garage was shielded somewhat by shrubs and Ms. Biermann's garage and cast no apparent shadows on her yard. Further, the examiner observed the sun would be blocked by trees to the south before interference by the new Markham garage. Furthermore, the examiner found although the Markhams' garage was described by the opposition as a two-story structure, "under the regulations of the Uniform Building Code as they apply to building height, a one-story garage with a pitched roof could be almost as tall as the current garage." There is no evidence in the record showing reduced value or damage to Ms. Biermann's property. The examiner properly concluded the adverse effect claimed by Ms. Biermann was personal to her. The examiner, based upon this record, concluded Ms. Biermann's complaints were subjective as compared to objective in nature. The examiner found as fact, after consider-

ing the substantial evidence in the record and his personal observations, that the height was not a significant impact on Ms. Biermann's property. Also, Ms. Biermann executed a side-yard waiver before the permit was issued and has now rejected it. Although not specifically mentioned by the examiner in his decision, the waiver is additional evidence bearing on both the Markhams' good faith and lack of adverse effect.

The examiner also decided other potential claims or concerns of significant adverse impact apart from those of Ms. Biermann were unfounded. Ms. Biermann does not appear to argue these other potential impacts; however, they are mentioned for clarity. First, for example, are the potential adverse impacts noted by the Transportation Department which are addressed by the analysis of the planning services staff report, Exhibit 15, incorporated by the hearing officer. Next, the setback is consistent with the setbacks of other garages and residences. Ex. 1 of Ex. 31. Last dispensed with is the argument that approval may set a precedent for others to avoid the zoning laws. The examiner, apparently considering this to be unsupported argument, dismissed the contention reasoning others would be unlikely to engage in this costly, slow and risky process.

The findings of the examiner bearing on the adverse impact claim are thus supported by substantial evidence in the record. In my view, the facts support the legal conclusion that the certificate of compliance will not adversely affect the neighboring property or the area. The trial court did not err when affirming the examiner's adverse effect ruling.

## CONCLUSION

The superior court did not err in deciding Ms. Biermann failed to carry her burden of establishing that one or more standards under RCW 36.70C.130 were met. The examiner's record contains substantial evidence supporting the findings of fact. The findings support the legal conclusions

that the permit and adverse effect criteria of SMC 11.02.0456 were satisfied for the issuance of the Markhams' certificate of compliance. Additionally, because Ms. Biermann concedes the remaining criteria, the approval of the certificate is necessary to relieve the Markhams of a substantial practical or economic hardship; all the criteria of SMC 11.02.0456 were met. The trial court and the decision of the hearing examiner should be affirmed. Accordingly, I respectfully dissent.

Reconsideration denied May 29, 1998.

Review denied at 137 Wn.2d 1004 (1999).