[No. 47755-2-I.   Division One.   November 19, 2001.]

NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, *Respondent*, v. THE EMPLOYMENT SECURITY DEPARTMENT, ET AL., *Appellants.*

214

216

*Christine O. Gregoire, Attorney General,* and *Mary C. Barrett, Senior Assistant;* and *Sonja D. Fritts,* for appellants.

*Judd H. Lees* (of *Williams, Kastner & Gibbs, P.L.L.C.*), for respondent.

AGID, C.J. — This case involves more than 20 electrical workers who claimed and received unemployment compensation benefits from the Employment Security Department of the State of Washington (the Department). All of the claimants are members of the International Brotherhood of Electrical Workers Local 46 (the Union). The former employers of the various claimants are all members of the National Electrical Contractors Association (NECA). After informal Department determinations and hearings before Administrative Law Judges (ALJs), the Commissioner of the Department issued decisions confirming the award of benefits in each case. NECA petitioned for judicial review in the King County Superior Court. The trial court ruled in

NECA's favor, remanding the cases to the Commissioner for additional fact-finding.

For purposes of judicial review, the parties agreed to consolidate three separate Department determinations awarding unemployment benefits to over 20 members of the Union. They are *In re Evarts* and *In re Storer*, which are exemplar cases for about 20 claims, and *In re Graham*. NECA represented the employers in the proceedings below. We conclude that in the *Storer* case, NECA submitted sufficient evidence to cause the Commissioner to doubt the claimant's availability for work. We therefore affirm the trial court's order remanding *Storer* to the Department for additional fact-finding. But we conclude that in the *Evarts* and *Graham* cases, the information NECA submitted was not sufficient to satisfy the "cause for doubting" standard, and we reverse the trial court's order in those two cases.

## FACTS

Under Washington's unemployment compensation act (Act), claimants must be able and available to work in order to receive benefits.[1] To be "available" for work, a claimant "must be actively seeking work pursuant to customary trade practices."[2] Registration with and participation in the referral procedure of a full referral union, like the Union in this case, generally satisfies the "actively seeking work" requirement of the statute. Union members in good standing who follow the Union's dispatch referral rules are presumed to be "available for work" in accordance with the Act.[3] All of the claimants in this case are Union members in good standing.

In each case, NECA challenged the Department's initial determination awarding benefits to the claimants. NECA attempted to rebut the presumption that they were avail-

---

[1] RCW 50.20.010(3).

[2] *Id.*

[3] *In re Malone*, No. 6-06395, Dep't of Empl. Sec. Comm'r Dec. No. 248 (Nov. 8, 1976).

able for work and provided varying degrees of evidence showing that electricians with lower seniority were dispatched during the same weeks when the claimants said they were available for work but were not hired.[4] NECA also presented evidence showing that during some of the weeks when the claimants accepted benefits, electrician jobs submitted by NECA employers to the Union went unfilled. On behalf of the former employers, NECA asked the Department to engage in additional fact-finding in order to determine whether the claimants were in fact available for work during the time they were receiving benefits.

After hearings before ALJs, the Office for Administrative Hearings denied the employers' requests for additional fact-finding. Under Washington Administrative Code (WAC) 192-04-040, a former employer must be "entitled to notice under WAC 192-12-320" in order to be an "interested party" entitled to appeal the Department's informal determination of benefits. WAC 192-12-320 provides that a former employer is an interested party entitled to notice if the employer provides "relevant information relating to [a claimant's] eligibility [for benefits] for a specific week." The ALJs in these cases concluded that the employers had not produced sufficient relevant information relating to the claimants' availability for work. Thus, because the former employers were not "interested parties," they were not entitled to participate further in the administrative process. The Commissioner affirmed the ALJs' decisions in each case.

NECA sought judicial review of the Commissioner's decisions. The superior court reversed, concluding that the evidence NECA presented was sufficient to rebut the presumption of the claimants' availability. The superior court remanded the case to the Department for additional fact-finding, and this appeal followed.

---

[4] All of the claimants in these cases are "Book 1" electricians who, under the Union's dispatch referral procedures, have priority over "Book 2" electricians in bidding on and accepting dispatch referrals.

## DISCUSSION

██ The Administrative Procedure Act (APA) governs judicial review of Department decisions.[5] We review the superior court's decision de novo.[6] "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity[.]"[7] NECA bears this burden here.

### I. DOES NECA HAVE STANDING?

██ Both the Union and the Department concede that the claimants' former employers would have standing to seek judicial review, but argue that NECA, by itself, lacks standing because it does not meet the APA's requirement of being "aggrieved or adversely affected" by the agency action.[8] Focusing on NECA's role as a representative, the appellants argue that "the entity potentially prejudiced by the Commissioner's decision is the employer, not its representative." To be "aggrieved or adversely affected" within the meaning of the statute, the following three conditions must be present:

(1) The agency action has prejudiced or is likely to prejudice that person;

(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and

(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.[9]

The first and third factors require a showing of "injury in fact," while the second requires the party to establish that the "Legislature intended the agency to protect the party's

---

[5] *See* RCW 34.05.570.

[6] *Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993).

[7] RCW 34.05.570(1)(a).

[8] RCW 34.05.530.

[9] *Id.*

interests when taking the action at issue."[10] All three factors are derived from federal case law, and the Legislature has expressly stated that " 'courts should interpret provisions of [the APA] consistently with decisions of other courts interpreting similar provisions of . . . the federal government.' "[11]

■ The Washington Supreme Court recently stated that an "interest sufficient to confer standing may be shown in [a] personal or representative capacity."[12] This statement reflects the federal approach our courts have adopted to determine whether organizations and associations have standing.[13] In *United Automobile Workers v. Brock* (UAW),[14] the U.S. Supreme Court stated that "the doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others."[15] Thus, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members."[16] In *Hunt v. Washington State Apple Advertising Commission*,[17] the U.S. Supreme Court estab-

---

[10] *St. Joseph Hosp. & Health Care Ctr. v. Dep't of Health*, 125 Wn.2d 733, 739-40, 887 P.2d 891 (1995).

[11] *Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council*, 129 Wn.2d 787, 794, 920 P.2d 581 (1996) (quoting RCW 34.05.001), *cert. denied*, 520 U.S. 1210 (1997).

[12] *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 415, 27 P.3d 1149 (2001) (citing *Vovos v. Grant*, 87 Wn.2d 697, 700, 555 P.2d 1343 (1976)).

[13] *See Ironworkers Dist. Council v. Univ. of Wash. Bd. of Regents*, 93 Wn. App. 735, 741 n.14, 970 P.2d 351 (1999) (citing *Save a Valuable Env't (SAVE) v. City of Bothell*, 89 Wn.2d 862, 868, 576 P.2d 401 (1978)).

[14] 477 U.S. 274, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986).

[15] *Id.* at 290; *see also SAVE*, 89 Wn.2d at 867 ("We agree that a nonprofit corporation or association which shows that one or more of its members are specifically injured by a government action may represent those members in proceedings for judicial review. . . . This rule is based on practical considerations. . . . An association . . . of persons with a common interest can then be the simplest vehicle for undertaking the task, and we see no reason to bar injured persons from this method of seeking a remedy." (citations omitted)).

[16] *Warth v. Seldin*, 422 U.S. 490, 511, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

[17] 432 U.S. 333, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

lished a three-part test for determining when an organization has standing to sue on behalf of its members.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit.[18]

All three conditions are satisfied in this case. First, appellants concede that the former employers, who are all NECA members, "would clearly have standing . . . as the entity impacted by the incorrect payment of benefits to its former employees." Second, appellants do not contest NECA's assertion that its "primary role is to represent its employer members in negotiations, arbitrations and administrative proceedings." Because employers are injured when unemployment compensation benefits are improperly awarded to their former employees, preventing wrongful awards is "germane" to NECA's purpose of representing electrical contractors in unemployment compensation proceedings.

Finally, the claims and relief requested here do not require the individual employers' participation. As we recognized in *Ironworkers District Council v. University of Washington Board of Regents*,[19] an organization lacks standing where it "seeks damages and yet alleges neither monetary injury to itself nor assignment of its members' damage claims."[20] Unlike the association in *Ironworkers*, NECA requests only that the cases be remanded to the Department for additional fact-finding. Because this is a request for prospective relief, not monetary damages, the individual employers need not participate.[21]

---

[18] *Id.* at 343. This court used the *Hunt* analysis in *Ironworkers*, 93 Wn. App. at 740-41.

[19] 93 Wn. App. 735, 970 P.2d 351 (1999).

[20] *Id.* at 741.

[21] *See Warth*, 422 U.S. at 515 ("[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial

Appellants' attempts to distinguish the associational standing cases NECA relies on is unpersuasive. The Union argues that this case differs from *UAW* because the Trade Act of 1974 "explicitly granted the UAW standing," but no statute grants NECA standing. The Union is mistaken. In *UAW*, the issue was whether the UAW had standing to challenge an agency policy directive that allegedly denied benefits to UAW members even though the Union did not allege any injury to itself. The issue here is identical. While it is true that the *UAW* Court said that Congress "gave unions a role in the administration of the TRA (trade readjustment allowance) program,"[22] the Union here mischaracterizes that language. It does not mean that the *UAW* decision was based on the Trade Act's explicit grant of standing to unions. Rather, the *UAW* Court discussed legislative intent solely to show that, under the second prong of the *Hunt* test, obtaining unemployment benefits for its workers was "germane" to the UAW's purpose.[23]

Based on the doctrine of associational standing, as articulated by the U.S. Supreme Court and employed by Washington courts, we hold that NECA has standing to obtain judicial review of the Commissioner's decisions.

## II. ARE THE EMPLOYERS "INTERESTED PARTIES"?

■ We next consider whether NECA submitted relevant information about the claimants' availability which was

---

measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.").

[22] *UAW*, 477 U.S. at 286.

[23] Appellants' attempt to distinguish *Trades Council*, 129 Wn.2d 787, is also in error. Although the appellants there were trade associations, it was unnecessary for the *Trades Council* court to address the issue of associational standing. Unlike the appellants in this case, the respondents there did not draw a distinction between the standing of a member of the association and the standing of the association itself.

sufficient to cause the Department to reasonably doubt the claimants' availability for work. If it did, NECA and the former employers became "interested parties" entitled to pursue their challenge to the benefit rulings. The unemployment compensation act provides that "[t]he applicant or claimant, his or her most recent employing unit *or any interested party which the commissioner by regulation prescribes*, may file an appeal from any determination" of benefits.[24] The WAC provides that an "employer entitled to notice under WAC 192-12-320" is an "interested party" entitled to appeal an informal determination of benefits.[25] The Act expressly gives the Commissioner authority to promulgate regulations defining "interested part[ies]" who are entitled to notice of benefit determinations for reasons other than lack of work.[26] Based on this authority, WAC 192-12-320(5) provides that an employer is entitled to notice "if the employer provides relevant information relating to [the claimant's] eligibility [for benefits] for a specific week." The effect of the WAC provisions is that only an employer providing "relevant information" about a claimant's eligibility for a specific week can require the Department to engage in additional fact-finding about the claimant's availability for work.[27]

NECA argues that the claimants were not eligible for benefits because they were not "available for work" as required by the unemployment compensation act.[28] As we noted earlier, registration with and participation in the referral procedure of a full referral union, like the Union in

---

[24] RCW 50.32.020 (emphasis added).

[25] WAC 192-04-040.

[26] RCW 50.20.180.

[27] We reject NECA's argument that "imposing an 'interested party' threshold preventing employer challenges is not 'consistent with the Commissioner's statutory authority' and constitutes an error of law." The statutory provisions cited above clearly authorize the Commissioner to define which employers are "interested parties" for the purposes of both benefit appeals and notice of benefit determinations.

[28] RCW 50.20.010(3).

this case, generally satisfies the "actively seeking work" requirement of the statute.

The Department's "Union Referral Program Guidelines" state that a question about a claimant's "availability for work" arises if an otherwise eligible union member refuses a union dispatch. A Department Circular published in 1994 provides that in order to meet the statute's "availability requirement," a union claimant must, among other things, "be immediately available for work and do whatever is required by the union to be referred to work." The claimant must also submit a continued claim form reporting any instances where he or she was not available for dispatch or refused a dispatch during any week for which benefits are claimed.

In the *Evarts* and *Storer* decisions, the Commissioner expressly referred to the Department-issued Supplement No. 1 to UI Circular 3-94. This document contains Department guidelines "[t]o provide instructions for Job Service Center staff when a claimant's availability for work is questioned for a week(s) previously allowed." The guidelines state:

> Before initiating a factfinding/rebuttal interview with the claimant . . . , an inquiry from an employer must provide relevant information regarding the claimant's availability. Such information may include some but not necessarily all of the following.
>
> — What specific week(s) in question?
>
> — What is the issue(s)? (for example, illness, on vacation)
>
> — Was a job available for the claimant during the week(s)?
>
> — If a union member, through what local was the job listed?
>
> — What was the nature of the job?
>
> — Were there special skills required for the job?
>
> — Where was the job located?
>
> — How long was the job to last?
>
> — When was the job available to the claimant?
>
> — If a union member, how many members were on the out of work list at the time the job was offered?

— How many members were referred to the job by the union?[29]

The claimant bears the ultimate burden of demonstrating his or her "availability" under the statute.[30] However, members in good standing of a full referral union are *presumed* to be "available for work" so long as they meet established union criteria for dispatch referral and place no unreasonable restrictions on their availability for work.[31] An employer can overcome the presumption of "availability" by submitting information creating a "cause for doubting" this *availability*.[32] "Cause for doubting" has been defined as more than a "mere suspicion."[33] In *In re Brotherton*, the Commissioner found the employer satisfied the "cause for doubting standard" by submitting evidence showing that "the claimant ha[d] been unemployed in the state's largest labor market area for some six months to the date of the appeal."[34]

In each of the cases consolidated here, the Commissioner determined that NECA had not provided sufficient relevant information to cause the Commissioner to doubt the claimants' "availability" for work, and thus were not "interested parties" under the Act. The determination whether the information submitted by the employers meets the "cause for doubting" standard is a mixed question of law and

---

[29] We reject NECA's argument that the Supplement is invalid because it "had not been passed pursuant to the APA Rule-making requirements." Since the Supplement does not "establish[], alter[], or revoke[] any qualification or requirement relating to the enjoyment of benefits or privileges conferred by law," it is not a "rule" within the meaning of the APA—RCW 34.05.010(16)(c). Therefore the Department did not have to comply with APA rule-making procedures in adopting the Supplement.

[30] *See Townsend v. Employment Sec. Dep't*, 54 Wn.2d 532, 534, 341 P.2d 877 (1959).

[31] *In re Malone* at 351.

[32] *Id.*

[33] *In re Brotherton*, No. 8-09773, Dep't of Empl. Sec. Comm'r Dec. No. 504 (Apr. 23, 1979).

[34] *Id.*

fact.[35] As such, "the factual findings of the agency are entitled to the same level of deference which would be accorded under any other circumstance."[36] Where neither party challenges the Commissioner's findings of fact, those findings are verities on appeal.[37] Otherwise, an agency's factual findings should be affirmed if they are "supported by evidence that is substantial when viewed in light of the whole record before the court."[38] "The process of applying the law to the facts, however, is a question of law and is subject to de novo review."[39]

NECA argues the Department's application of the "interested party" standard in these cases creates an "impossibly high threshold of 'relevance' for NECA members to meet in order to question initial determinations of benefit eligibility." Considering the limited access to relevant facts that NECA members have, we find NECA's argument compelling. Washington courts have historically applied the long-recognized principle that the burden of proof is better placed on the party having easier access to the relevant information.[40] The unemployment compensation act is consistent with this principle in placing the ultimate burden on the claimant to demonstrate his or her availability.

NECA members do not have access to the Union referral hall daily sign-in sheets that would easily demonstrate whether a claimant was, in fact, meeting the statute's "actively seeking work" requirement. And NECA members have no way of knowing which dispatches a particular claimant refuses. By contrast, it is easy for a claimant to prove his or her "availability" for work simply by submit-

---

[35] *See Tapper*, 122 Wn.2d at 402 (A mixed question of law and fact "requires the application of legal precepts . . . to factual circumstances.").

[36] *Id.* at 403.

[37] *Forsman v. Employment Sec. Dep't*, 59 Wn. App. 76, 79, 795 P.2d 1184 (1990), *review denied*, 116 P.2d 1005 (1991).

[38] RCW 34.05.570(3)(e).

[39] *Tapper*, 122 Wn.2d at 403.

[40] *See, e.g.*, *Jolliffe v. N. Pac. R.R.*, 52 Wash. 433, 436, 100 P. 977 (1909).

ting evidence of his or her compliance with union hiring hall requirements.

The WAC provision defining "interested party" requires only that the employer submit "relevant" information regarding "eligibility for a specific week."[41] It does not expressly require employers to come up with specifics about particular dispatches allegedly refused by a claimant. The Department's application of the "interested party" standard in the *Storer* case essentially required the employers to produce specific evidence which they had no way of obtaining. Therefore, we affirm the trial court's conclusion in *Storer* that the employers presented evidence sufficient to cause the Commissioner to doubt the claimants' availability. However, we reverse the trial court's decisions in *Evarts* and *Graham* because in those cases, the evidence NECA submitted did not satisfy the "cause for doubting" standard. We discuss each case separately below.

### *In re Evarts*

In challenging the Department's informal determination of benefits, NECA sent a letter to the Department which stated: "We know work was available since other union members and traveling electricians obtained employment during that period." The letter specified the weeks in question, but did not mention any instance where union members with lower seniority than Evarts were dispatched during the time Evarts was collecting benefits. Nor did it mention any evidence indicating that the Union had been unable to fill electrician requests submitted by NECA members while Evarts was collecting benefits.

At the hearing, NECA asserted that Book 2 electricians were dispatched during the time Evarts, a Book 1 electrician, was collecting benefits. NECA argued that since Book 1 electricians have seniority over Book 2 electricians, "Book 1's have priority over any job. Book 2's may only be dispatched again if Book 1's are not available or reject

[41] WAC 192-12-320(5).

work." But there is no documentary evidence in the record before this court showing that Book 2 electricians were in fact dispatched during the relevant weeks. We agree with the Commissioner that mere suspicion is insufficient to establish interested party status. Because NECA's initial challenge to the Department's informal benefit determinations in this case lacked specificity, we affirm the Commissioner's determination that the employers "failed to provide relevant information to the department sufficient to create 'interested party' status pursuant to WAC 192-12-320(5) and WAC 192-04-040."

## *In re Storer*

Unlike *Evarts*, in this case NECA's initial letter to the Department contained evidence showing that Book 2 electricians were dispatched during the time Storer was collecting benefits. The Commissioner noted that "Book 1 electricians have the option to be dispatched before any Book 2 electrician can be dispatched [and] that Book 2 electricians have been dispatched every week in 1999." NECA also stated that during some of the time Storer was collecting benefits, "Local 46 [was] not able to fill all the electrician requests from the union employers."

We conclude that this information was sufficient to cause the Commissioner to doubt Storer's availability for work. The Department and the Union correctly point out that there may be a variety of factors, such as location or special qualifications, that make a particular job unsuitable for a claimant. It is also true that NECA was unable to show that Storer ever refused a suitable dispatch to work with a specific employer. However, given its lack of access to Union hiring hall records, it would be impossible for NECA to satisfy the Commissioner's requirement that it submit proof showing a "claimant refused a dispatch to work with a specific employer where he or she was qualified to do the work and it was otherwise suitable." And, as we noted above, NECA does not have access to Union records that

would establish whether or not Storer was complying with the Union's dispatch referral rules.

We hold that in applying the "interested party" standard, the Commissioner erred in concluding that the information NECA submitted in its initial letter to the Department about dispatch of Book 2 electricians and unfilled electrician requests was not "relevant" to the claimants' eligibility for benefits. That information was sufficient to require additional fact-finding, imposing the minimal burden on the Department of verifying that the claimants in *Storer* were in fact available for work.

## *In re Graham*

Daniel Graham lives in Bremerton and reports to the Union office there for dispatch. In this case, NECA challenged the Department's informal determination of benefits, alleging that during the contested weeks, "journeyman wireman positions went unfilled in IBEW Local 46." At the ALJ hearing, NECA presented evidence consisting of "Unfilled Calls forms" and a printout from the "Unfilled Jobs database," showing that many jobs submitted to the Union during this period went unfilled. NECA did not contest the Commissioner's finding that Graham "customarily reports to [the Union office] at least three times a week while awaiting dispatch."

At the hearing, the ALJ focused on the issue of when a job's location makes it unsuitable for a particular claimant. It is uncontested that although Graham has worked in King County in the past, "he seeks work primarily in Kitsap County and secondarily in downtown Seattle, within walking distance of the ferry dock." Although Graham testified that he has, on occasion, accepted jobs in King County outside Seattle if he was able to carpool with another worker, NECA did not contest the ALJ's determination that a "claimant need not be available for work throughout the union's jurisdiction." NECA offered no evidence showing that Union members living on the Kitsap Peninsula cus-

tomarily accept dispatches to work in King County, outside of downtown Seattle. Therefore, the Commissioner correctly affirmed the ALJ's conclusion that NECA failed to "create more than a mere suspicion that [Graham] failed to meet statutory requirements."

In order to become an "interested party," NECA must present evidence in its initial letter that provides a basis for the Department to reasonably doubt the claimant's availability for work. Where the claimant is a Book 1 electrician, evidence that Book 2 electricians were dispatched and that electrician jobs submitted to the Union went unfilled while the claimant was collecting benefits satisfies the "cause for doubting" standard. Therefore, we affirm the trial court's decision remanding the *Storer* case to the Department for additional fact-finding. But, we reverse the trial court's decisions in *Evarts* and *Graham* because the evidence NECA submitted in its initial presentations was not sufficient to rebut the presumption of availability.

GROSSE and Cox, JJ., concur.